# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT PRESLAR, Y-28487, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) Case No. 18−cv−2121−NJR<br>) |
| JOHN BALDWIN, CHRISTOPHER THOMPSON, CHRISTINE BROWN, and KIM RICHARDSON, | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Robert Preslar, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Pinckneyville Correctional Center ("Pinckneyville"), filed this *pro se* action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff claims Defendants (John Baldwin, IDOC Director; Christopher Thompson ("Warden Thompson"),[1] Pinckneyville's Warden; Christine Brown, Americans With Disabilities Act Coordinator; and Kim Richardson, Nurse) have exhibited deliberate indifference to his serious medical needs and seeks monetary and injunctive relief. The Complaint indicates that Plaintiff is in need of immediate medical care and adjustments to his conditions of confinement. Accordingly, as set forth more fully below, the Court interprets the Complaint as including a motion for a preliminary injunction.

The Complaint (Doc. 1) is now before the Court for a preliminary review pursuant to

---

[1] The Court notes that Scott Thompson is the Acting Warden of Pinckneyville. It appears that when Plaintiff refers to Warden Christopher Thompson he may actually mean Scott Thompson.

Section 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks money damages from a defendant who by law is immune from such relief, must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations in the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## **The Complaint**

According to the Complaint, Plaintiff was severely injured in March 2017. (Doc. 1, p. 5). He fractured his pelvis, ruptured his spleen, crushed his ribs, suffered from a traumatic brain injury, and was in a coma for a week. *Id.* It appears that because of these injuries, Plaintiff is now confined to a wheelchair. *Id.*

Plaintiff arrived at Pinckneyville on April 23, 2018. (Doc. 1, p. 6). Approximately three weeks later, he was transferred to a cell that did not accommodate his disability. *Id.* The beds and showers were not properly equipped for an individual in a wheelchair. *Id.* Plaintiff remained in this cell until August 23, 2018, when he was transferred to another cell. The second cell suffers from the same inadequacies as the first cell. (Doc. 1, pp. 5-8). As a result, Plaintiff often sleeps in his wheelchair, and he is unable to shower. *Id.* Plaintiff began submitting complaints about his conditions of confinement to Brown and Warden Thompson in May 2018. (Doc. 1, pp. 6-8). Unfortunately, however, his complaints have been ignored.

On July 24, 2018, Plaintiff informed Brown that his wheelchair was damaged. (Doc. 1, p. 7). Brown told Plaintiff she would request a repair, and, in the meantime, Plaintiff should be cautious. *Id.* On July 28, 2018, before the wheelchair could be repaired, the wheels fell off, and

Plaintiff was injured. *Id.* Plaintiff claims that Nurse Richardson responded to his request for medical attention, but despite obvious injuries, refused to treat him. *Id.*

On August 7, 2018, Plaintiff was informed that he needs surgery (what type of surgery is not clear, but it appears to be related to his right leg). (Doc. 1, p. 8). Defendant Brown and Dr. Mayer (not a defendant in this action) informed him that they will not spent the state's money on his surgery because he is scheduled for release in March 2019. (Doc. 1, pp. 5, 8). Plaintiff claims that, without the surgery, his "right foot and leg [are] swollen to twice the size." (Doc. 1, p. 5). He also claims he is not otherwise receiving medical attention for this condition and that he is in excruciating pain. (Doc. 1, p. 8).

In connection with these claims, Plaintiff seeks compensatory damages. (Doc. 1, pp. 10-11). He also seeks an "immediate date for an injunction." With respect to the request for injunctive relief, Plaintiff states that he is "unable to shower and his foot and leg has been swollen since his fall and he is not receiving medical attention bed ridden in excruciating pain without pain medication." (Doc. 1, p. 11).

### **Preliminary Dismissals**

Several potential claims are not associated with any particular defendant (e.g., "the state" refused to pay for Plaintiff's MRIs in September 2018, guards on the "first shift" refused Plaintiff medical attention after he fell in the shower…). Because these claims are not associated with any particular defendant, they are dismissed without prejudice. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007); FED. R. CIV. P. 8(a)(2). Additionally, although the body of the Complaint attributes allegedly unconstitutional conduct to Dr. Mayer, he or she is not identified as a defendant in the case caption or list of defendants. Accordingly, any claims intended against this individual are dismissed without prejudice. *See Myles v. United States*, 416 F.3d 551, 551-52

(7th Cir. 2005). Finally, the Complaint is devoid of allegations suggesting that John Baldwin, the Director of IDOC, was personally responsible for violating Plaintiff's constitutional rights; it includes only generic allegations pertaining to his responsibilities as the Director of IDOC. (Doc. 1, p. 9). Accordingly, any individual capacity claims Plaintiff intended to bring against Baldwin are dismissed without prejudice. *See Gayton v. McCoy*, 593 F.3d 610, 622 (7th Cir. 2010); *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001); *Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). Baldwin is an appropriate official capacity defendant, however, with respect to Count 1.[2] Accordingly, he shall remain on the docket as an official capacity defendant.

**Discussion**

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit. Any claims not addressed in this Order should be considered dismissed without prejudice from this action.

> **Count 1:** Americans with Disabilities Act ("ADA") and/or Rehabilitation Act ("RA") claim against Baldwin (official capacity) for failing to meet Plaintiff's disability-related needs from approximately April 2018 (when Plaintiff was transferred to the first cell that allegedly failed to accommodate his needs) through the present.
>
> **Count 2:** Eighth Amendment claim against Brown and Warden Thompson for exhibiting deliberate indifference to Plaintiff's disability-related needs from approximately May 2018 (when Plaintiff's began submitting complaints about his housing conditions) through the present.

---

[2] As a general rule, there is no personal liability under Title II of the Americans with Disabilities Act or the Rehabilitation Act. *Stanek v. St. Charles Cmty. Unit Sch. Dist.* No. 303, 783 F.3d 634, 644 (7th Cir. 2015). The only proper defendant in a claim under these statutes is the state agency (or a state official acting in his or her official capacity); employees of the IDOC are not amendable to suit under either Act. *See Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012).

**Count 3:** Eighth Amendment deliberate indifference claim against Richardson for refusing Plaintiff medical care when he fell from his wheelchair on August 28, 2018.

**Count 4:** Eighth Amendment deliberate indifference claim against Brown for denying Plaintiff necessary surgery for nonmedical reasons.

**Count 5:** Eighth Amendment deliberate indifference claim against Brown for failing to immediately repair Plaintiff's wheelchair on July 24, 2018.

**Count 1**

According to the ADA, "no qualified individual with a disability shall, because of that disability ... be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2006). The RA likewise prohibits discrimination against qualified individuals based on a physical or mental disability. *See* 29 U.S.C. §§ 794-94e. The RA includes as an additional requirement the receipt of federal funds, however, which all states accept for their prisons. *Cutter v. Wilkinson*, 544 U.S. 709, 716 n. 4 (2005). Discrimination under both includes the failure to accommodate a disability. *Jaros v. Illinois Dep't of Corrections*, 684 F.3d 667, 672 (7th Cir. 2012) (citation omitted).

Plaintiff has alleged that he is a qualified person with a disability due to his physical impairment under both the ADA and RA. Further, he has alleged that Baldwin (in his official capacity) failed to make reasonable accommodations by housing him in cells that were not designed to accommodate his wheelchair, denying him access to bedding and showers. These allegations are sufficient to articulate a colorable ADA and/or RA claim, at least at this early stage. Accordingly, Count 1 shall proceed against Baldwin in his official capacity. *See Jaros v. Illinois Dep't of Corr.,* 684 F.3d 667, 670 n. 2 (7th Cir. 2012); *Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012).

**Count 2**

The allegations support an Eighth Amendment deliberate indifference claim against Warden Thompson and Brown who, despite Plaintiff's complaints about his disability related needs and potentially unsafe housing conditions, took no action on Plaintiff's behalf. *See Perez v. Fenoglio*, 792 F.3d 768 (7th Cir. 2015); *Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984 (7th Cir. 2012).

**Count 3**

Count 3 shall proceed against Richardson on the ground that, after Plaintiff fell from his wheelchair on July 28, 2018, Richardson refused to provide him with medical treatment despite Plaintiff's complaints about leg and foot pain, severe neck pain, excruciating back pain, and sharp shooting pains throughout his body. *See Farmer v. Brennan,* 511 U.S. 825, 837, (1994); *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)

**Count 4**

Count 4 shall proceed against Brown based on the allegation that he denied and/or is denying Plaintiff necessary medical care (surgery) for nonmedical reasons (to save IDOC money). *See e.g., Farmer v. Brennan*, 511 U.S. 825 (1994); *Perez v. Fenoglio*, 792 F.3d 768 (7th Cir. 2015).

**Count 5**

Count 5 shall be dismissed without prejudice for failure to state a claim upon which relief may be granted. Plaintiff claims that on July 24, 2018, he asked Brown for wheelchair repairs, explaining that "when the wheelchair is pushed fast the wheels will roll off." (Doc. 1, p. 7). According to the Complaint, Brown submitted a request for repairs and told Plaintiff to use caution

while waiting on repairs (she told Plaintiff to go slowly until the chair could be repaired).[3] Four days later, one or more wheels popped off his wheelchair, and Plaintiff was injured. *Id.*

"Deliberate indifference occurs when a defendant realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (plaintiff must show that officials are "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and they must also draw the inference.")). Plaintiff's allegations, without more, fall short of stating a viable deliberate indifference claim. As far as Brown knew, the wheels were only wobbly if the wheelchair was pushed too fast. Brown was attempting to repair the wheelchair and, in the interim, directed Plaintiff to use caution. This does not suggest that Brown was aware of but ignored a serious risk to Plaintiff's safety. Accordingly, Count 5 shall be dismissed without prejudice.

### Injunctive Relief

In his request for relief, Plaintiff seeks "an immediate date for an injunction." (Doc. 1, p. 11). Plaintiff further states that he has been unable to shower, his foot and leg are severely swollen, he is bed ridden, and he is not receiving appropriate medical care. Also, throughout the Complaint, Plaintiff states that he is being denied necessary medical treatment–surgery (presumably in relation to his severely swollen right foot and leg). In light of these requests, the Clerk of Court is **DIRECTED** to **ADD** a Motion for Preliminary Injunction as a docket entry in the Case Management/Electronic Case Filing ("CM/ECF") system.

Typically, the Court would direct Plaintiff to file a brief in support of this request,

---

[3] Plaintiff told Brown the wheels could fall off if he went too fast, and Brown told Plaintiff to move slowly until the wheelchair could be repaired. (Doc. 1, p. 7)

specifying the reasons he is entitled to relief under Rule 65(a) of the Federal Rules of Civil Procedure. Given the apparent urgency of Plaintiff's claims, however, and because the basis for the requested relief can be gleaned from the Complaint, the Court will forego its usual directive for additional briefing from Plaintiff.

### Disposition

The Clerk is **DIRECTED** to **ADD** a Motion for Preliminary Injunction as a separate docket entry in CM/ECF. The Court will enter a separate order setting a hearing on the Motion for Preliminary Injunction and directing Defendants to respond to the same.

**IT IS HEREBY ORDERED** that any intended claims directed against **BALDWIN** in his personal capacity are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that **COUNT 1** will proceed as to **BALDWIN** (official capacity only).

**IT IS FURTHER ORDERED** that **COUNT 2** will proceed as to **BROWN** and **WARDEN THOMPSON.**

**IT IS FURTHER ORDERED** that **COUNT 3** will proceed as to **RICHARDSON**.

**IT IS FURTHER ORDERED** that **COUNT 4** will proceed as to **BROWN**.

**IT IS FURTHER ORDERED** that **COUNT 5** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that the Clerk of Court shall take appropriate steps in coordination with the United States Marshals Service, to effect formal, **PERSONAL SERVICE** of summons, the Complaint (Doc. 1), which includes a request for preliminary injunctive relief, and this order upon each Defendant at his or her work address, as provided by Plaintiff. The Court

will not require Defendants to pay the full costs of formal service, as the Court is ordering personal service to expedite the resolution of Plaintiff's Motion for a Preliminary Injunction.

The United States Marshals Service is **APPOINTED** pursuant to Federal Rule of Civil Procedure 4(e) to effect service. The Clerk is **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on Defendants **WARDEN THOMPSON, BROWN, RICHARDSON,** and **BALDWIN** (official capacity only). The Clerk shall issue the completed summons and prepare a service packet for each Defendant consisting of: the completed summons, the completed form USM-285, a copy of the Complaint (Doc. 1), and this Memorandum and Order. The Clerk shall deliver the service packets for each Defendant to the United States Marshals Service for personal service on each Defendant.

Pursuant to Federal Rule of Civil Procedure 4, on or before **December 19, 2018**, the United States Marshals Service **SHALL PERSONALLY SERVE** upon Defendants **WARDEN THOMPSON, BROWN, RICHARDSON,** and **BALDWIN** (official capacity only), the service packets containing the summons, form USM-285, a copy of the Complaint (Doc. 1), the Motion for Preliminary Injunction (Doc. 5), and this Memorandum and Order. **LEAVING THE SUMMONS WITH THE PRISON'S LITIGATION COORDINATOR IS NOT SUFFICIENT–each Defendant must be personally served**. All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Further, this entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(3) and 28 U.S.C. § 636(c), *if all parties consent to such*

*a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, even if his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  December 5, 2018**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, in order to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. The plaintiff need not submit any evidence to the court at this time, unless otherwise directed by the Court.